**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, <br><br> *Plaintiff,* <br><br> v. <br><br> DANIELLE SAILOR, et al., <br><br> *Defendants.* | ) ) ) ) ) ) ) ) ) ) ) ) ) <br> No. 4:23-cv-00019-JMD |

**<u>Memorandum and Order</u>**

Raymond Bonds, Jr., was shot dead fifteen days after making his girlfriend the beneficiary of his life insurance policy.  Because his girlfriend is a suspect, the insurance company does not know who to pay.  If she is proven liable for the death, federal regulations require that the company instead pay one or both of Bonds' parents.  So the insurance company sued the girlfriend and the parents.  The company says it is disinterested; it does not care who gets paid.  It wants the Court to take control of the $400,000 payout, dismiss the company, and then decide who among all the potential claimants gets the money.

But the Court has neither diversity jurisdiction nor federal question jurisdiction.  There is no diversity jurisdiction because the insurance company is disinterested, so its residency is irrelevant under Supreme Court and Eighth Circuit precedent.  What matters is the residency of the claimants—and they all reside in Missouri.  The Court likewise lacks federal question jurisdiction.  The parties cite no federal provision creating an express cause of action for suits by or against insurance companies in these kinds of circumstances.  Supreme Court precedent substantially limits implied causes of action, and nothing cited by the parties clears that high hurdle.  This case belongs in state court.

1

**Factual and Legal Background**

Prudential provides life insurance benefits for members of the military, through the Office of Servicemembers' Group Life Insurance. Federal statutes and regulations govern the benefits of Servicemembers' Group Life Insurance. 38 U.S.C. § 1970. As relevant here, federal regulations prohibit paying the proceeds of a life insurance policy to a person "who is convicted of intentionally and wrongfully killing the decedent or determined in a civil proceeding to have intentionally and wrongfully killed the decedent." 38 C.F.R. § 9.5(e)(2)(i). In that event, the proceeds shall be payable to "the decedent's parents, in equal shares, or to the survivor of them." *Id.* § 9.5(e)(4)(i)(D).

Prudential fears that this regulation might prohibit paying benefits to Danielle Sailor, the named beneficiary of Bonds' $400,000 Servicemembers' Group Life Insurance policy. After discovering that Bonds died from a gunshot wound to the torso, Prudential contacted a St. Louis Metropolitan Police Department detective. The detective informed Prudential that Sailor is a suspect in Bonds' death.

Knowing that it must pay somebody—but not knowing whom—Prudential brought an action in interpleader, naming all potential claimants as defendants: Bonds' girlfriend (Sailor), Bonds' father (Raymond Bonds, Sr.), and Bonds' mother (Diane Meeks, who never responded to the suit). Prudential believed that this interpleader action could force the girlfriend and the parents to litigate between themselves about who should receive the insurance proceeds. Interpleader is "an ancient equitable remedy which recognizes the right of a disinterested stakeholder, from whom several persons claim the same thing, debt, or duty, to have the conflicting claimants litigate the matter among themselves without embroiling him in their controversies." *Klaber v. Md. Cas. Co.*, 69 F.2d 934, 936 (8th Cir. 1934).

There are two kinds of interpleader actions.  First is a "true bill of interpleader," which involves only a disinterested stakeholder who has no "interest in the subject of the controversy between the defendants."  *Id*. at 940.  Second is a "bill in the *nature* of interpleader."  *Id*. (emphasis added).  That kind involves an *interested* stakeholder—for example, a stakeholder who disagrees about how much money it owes.  *See id*.  Prudential brings a true bill of interpleader: it asserts no interest in the insurance proceeds, does not dispute the amount it owes, and says it is "a disinterested stakeholder."  ECF 39 at 14.

Interpleader actions typically proceed in two stages.  "During the first stage, the court determines whether the stakeholder has properly invoked interpleader, including whether the court has jurisdiction over the suit . . . ."  *Banner Life Ins. Co. v. Vernard*, No. C24-3008-LTS-KEM, 2024 WL 3239734, \*3 (N.D. Iowa June 28, 2024) (quoting *United States v. High Tech. Prod., Inc.*, 497 F.3d 637, 641 (6th Cir. 2007)).  In the second stage, a court "determines the respective rights of the claimants to the fund or property at stake via normal litigation processes, including pleading, discovery, motions, and trial."  *Id*.  All parties appearing before this Court agree that Prudential properly invoked interpleader.  ECF 39 at 14; ECF 46; ECF 47 at 2.  They ask the Court to hold the funds, dismiss Prudential, and proceed to the second stage.  *Id*.

## Analysis

Despite the parties' request, this Court cannot proceed to the second stage of this interpleader action.  "Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it."  *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010).  Interpleader actions generally enter federal courts through the Federal Interpleader Act, 28 U.S.C. § 1335(a), or through Rule 22 of the Federal Rules of Civil

3

Procedure. *Acuity v. Rex, LLC*, 296 F. Supp. 3d 1105, 1107 (E.D. Mo. 2017), *aff'd*, 929 F.3d 995 (8th Cir. 2019). Here, neither vehicle suffices.

The Federal Interpleader Act gives federal district courts jurisdiction over some interpleader suits, but not this one. It gives district courts "original jurisdiction of any civil action of interpleader or in the nature of interpleader" if the amount in controversy is "$500 or more" and the claimant-defendants are at least minimally diverse: "[t]wo or more adverse claimants, of diverse citizenship . . . are claiming or may claim to be entitled to such money or property." 28 U.S.C. § 1335(a). The potential claimants here do not satisfy the requirement of minimal diversity because all three are Missouri citizens.

Prudential instead invokes Rule 22 of the Federal Rules of Civil Procedure. But under this rule, Prudential must still identify some statute creating jurisdiction. Although Rule 22 discusses interpleader, it "is merely a procedural device and confers no federal jurisdiction." *Blackmon Auctions, Inc. v. Van Buren Truck Ctr., Inc.*, 901 F. Supp. 287, 289 (W.D. Ark. 1995). Rather, jurisdiction "must be based upon the general jurisdiction statutes applicable to civil actions in the federal courts." *St. Louis Union Tr. Co. v. Stone*, 570 F.2d 833, 835 (8th Cir. 1978). Prudential must establish the Court has either diversity jurisdiction or federal question jurisdiction. It has failed.

## I. Diversity Jurisdiction

The question at issue here has long been the subject of debate among scholars: In interpleader actions, can a federal court exercise diversity jurisdiction if all the potential claimants are citizens of the same State? *See, e.g.*, Zechariah Chafee, Jr., *Interpleader in the United States Courts*, 41 Yale L.J. 1134, 1142–43 (1932); Kristen DeWilde, Comment, *Catch Rule 22: When Interpleader Actions Violate Statutory and Constitutional Diversity Jurisdiction Requirements*, 168 U. Penn. L. Rev. 467, 482–84 (2020) (examining the debate among the drafters of Rule 22).

Prudential says yes.  Although the potential claimants are all citizens of Missouri, Prudential says it is enough that Prudential, a New Jersey company, is diverse from the potential claimants even though Prudential is disinterested and thus adverse to none of them.  The Court disagrees.  Under binding precedent, only the citizenship of interested parties counts for purposes of general diversity jurisdiction.  A disinterested party like Prudential is considered only a nominal party whose citizenship the Court must disregard.

### A.

"In interpleader proceedings the claimants are the real contestants and their citizenship, and not that of the stakeholder, determines jurisdiction."  *Cramer v. Phoenix Mut. Life Ins. Co. of Hartford, Conn.*, 91 F.2d 141, 146 (8th Cir. 1937).  Although *Cramer* was brought under the Federal Interpleader Act, the Eighth Circuit's analysis concerned the "ancient equitable remedy" of interpleader generally.  *Id.* (citation omitted).  "[I]n line with the rule generally recognized where federal jurisdiction rests upon diversity of citizenship," the Eighth Circuit explained, "'[a] custodian or stakeholder of property is usually held to be a merely nominal party whose citizenship does not affect the question of federal jurisdiction." *Id.* (quoting *Fed. Rsrv. Bank of Kansas City, Mo. v. Omaha Nat. Bank of Omaha, Neb.*, 45 F.2d 511, 514 (8th Cir. 1930)).  *Cramer*'s holding thus applies to *all* interpleader actions, not just those brought under the Federal Interpleader Act.  And under *Cramer*, this Court has no diversity jurisdiction unless the potential claimants—Bonds' girlfriend, father, and mother—are diverse.

The Supreme Court adopted *Cramer*'s reasoning in *Treinies v. Sunshine Mining Co.*, 308 U.S. 66 (1939).  After a Washington corporation interpleaded a Washington defendant and an Idaho defendant, the Court questioned whether it lacked diversity jurisdiction because the plaintiff and a defendant shared citizenship.  The Supreme Court decided that the corporation's Washington citizenship was irrelevant to diversity jurisdiction because, in

5

interpleader actions, the "real controversy" is "between the adverse claimants." *Id*. at 72. The Washington corporation "demonstrate[d] [its] disinterestedness" when it moved to deposit funds with the district court and then exit the suit. *Id*. As to the controversy between the claimants (the interpleaded defendants), the court had jurisdiction because "all the parties on one side [we]re of citizenship diverse to those on the other side." *Id*. at 71. A leading treatise summarizes the Supreme Court's holding this way: "the citizenship of a disinterested stakeholder was irrelevant in cases of statutory interpleader because the only real controversy was between the claimants." 7 *Wright & Miller's Federal Practice and Procedure* § 1710 (3d ed. 1998).

*Treinies* expressly reserved the question at issue here. 308 U.S. at 73 n.17 ("We do not determine whether the ruling here is inconsistent with the conclusion in those cases where jurisdiction was rested on diversity of citizenship between the applicant and cocitizens who are claimants."). But the reasoning in *Treinies* speaks to interpleader more broadly. And its reasoning "cast[s] doubt on the constitutionality of allowing a disinterested stakeholder to proceed under Rule 22(a) based on this kind of nonadversarial diversity of citizenship." *Wright & Miller*, *supra*, § 1710.

**B.**

Under these precedents, the Court lacks diversity jurisdiction. The potential claimants are all citizens of Missouri. And the Court must disregard Prudential's citizenship because it is—by its own admission—"a disinterested stakeholder." ECF 39 at 14.[1] "In no real sense is" Prudential "a party to the litigation." *Cramer*, 91 F.2d at 146. The company's

---

[1] Prudential also asked for attorneys' fees, ECF 1 at 6. But the jurisdiction of federal courts cannot be based solely on a claim for attorneys' fees; otherwise "the limitation of federal jurisdiction to cases and controversies would be empty." *Frost v. Sioux City, Iowa*, 920 F.3d 1158, 1162 n.1 (8th Cir. 2019) (citation omitted).

"only concern" is that "it pay the money into the registry of the court, and that its rival claimants be summoned to present their respective interests to the court for adjudication." *Id.* Prudential "demonstrate[d] [its] disinterestedness as between the claimants and as to the property in dispute" by asking—just as in *Treinies*—merely to deposit funds with the Court and then exit. *Treinies,* 308 U.S. at 72. All parties who entered an appearance agree that these are Prudential's only requests. This lack of controversy between Prudential and the nondiverse claimants precludes general diversity jurisdiction.

## C.

None of the other cases the Court located suggests a different outcome.

The Supreme Court has been clear that "drive-by jurisdictional rulings . . . have no precedential effect." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 91 (1998); *accord United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952) (courts are "not bound by a prior exercise of jurisdiction in a case where it was not questioned and it was passed sub silentio"). So the Eighth Circuit's holding in *Webb v. Voirol*, 773 F.2d 208 (8th Cir. 1985), offers no guidance here. *Webb* affirmed a district court's allocation of proceeds in a case involving Rule 22 interpleader. Although the plaintiff had relied on diversity jurisdiction, *Webb* never discussed *Treinies* or *Cramer*, and it offered no other jurisdictional analysis.

The Eighth Circuit did find general diversity jurisdiction in a Rule 22 insurance interpleader case. *Hunter v. Federal Life Ins. Co.*, 111 F.2d 551, 556 (8th Cir. 1940). But there, the panel accepted that the action was "sufficient as a bill *in the nature* of interpleader, which may be maintained by one who is not a mere stakeholder." *Id.* (emphasis added). The court stressed that the insurance company was an interested party: one of the claimants "sought to subject the [interpleader] plaintiff to penalties and attorney's fees." *Id.* at 555. It follows that general diversity jurisdiction exists for cases *in the nature* of interpleader,

7

because there, unlike here, a controversy exists between the *interested* stakeholder and the claimants. *See, e.g.*, *Underwriters at Lloyd's v. Nichols*, 363 F.2d 357, 359 (8th Cir. 1966) (noting that the insurance companies that brought an interpleader action denied liability and argued that any liability should be limited to the amount provided for in the insurance policies); *Federated Mut. Ins. Co. v. Moody Station and Grocery*, 821 F.3d 973, 977 (8th Cir. 2016) (explaining that an interpleader-plaintiff insurance company was interested in some of the funds at issue). The Court thus believes that *Hunter* is inapposite.[2] *Hunter* holds that diversity jurisdiction is proper when an interpleader-plaintiff is an interested party. In contrast, *Cramer* governs where, as here, the interpleader-plaintiff is disinterested.

Absent binding precedent, the Court might have made a different decision. As *Hunter* suggests, there may be no such thing as a truly disinterested plaintiff in interpleader. *See* 111 F.2d at 555. The entire reason for bringing an interpleader action and forcing all potential claimants into court is to avoid "the danger of multiple liability" and to minimize the chance that a litigant will sue the company for "vexati[ous]" refusal to pay. *Id.* But the Court cannot disregard *Cramer* or *Treinies* or the distinction created by binding precedent between "true" interpleader actions and actions in the "nature" of interpleader.[3] Because the citizenship of a disinterested stakeholder cannot prop up diversity jurisdiction, Prudential's interpleader action cannot proceed.

---

[2] But even assuming *Cramer* and *Hunter* conflict, *see Hunter*, 111 F.2d at 556 n.3 (citing *Cramer* with the "But see" signal), the earlier decision controls. "[W]hen faced with conflicting panel opinions, the earliest opinion must be followed 'as it should have controlled the subsequent panels that created the conflict.'" *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (quoting *T.L. ex rel. Ingram v. United States*, 443 F.3d 956, 960 (8th Cir. 2006).

[3] Absent *Cramer* and *Treinies*, the Court would also have to assess whether the prospects of liability for vexatious refusal to pay or double liability were too remote to establish ripeness.

## II. Federal Question Jurisdiction

This Court also lacks federal question jurisdiction. The Supreme Court has identified two circumstances where federal question jurisdiction exists: "when federal law creates the cause of action asserted" and, "on rare occasions," when a claim resting on state law "necessarily raises a substantial and actually disputed federal question." *Royal Canin U. S. A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (cleaned up). Neither applies here.

### A.

Federal causes of action can be express or implied. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014). The laws at issue here contain neither.

The parties identify no express cause of action in the statute governing Servicemembers' Group Life Insurance. The provision that comes closest confers jurisdiction onto federal district courts, but only for suits against the United States, not suits by or against insurance companies. 38 U.S.C. § 1975 ("The district courts of the United States shall have original jurisdiction of any civil action or claim against the United States founded upon this subchapter."). And even that language might be insufficient to create a cause of action. In another context, the Supreme Court has held that, absent something more, "a jurisdictional statute creat[es] no new causes of action." *Sosa v. Alvarez-Machain*, 542 U.S. 692, 724 (2004).

Prudential focuses instead on urging the Court to identify an implied cause of action, citing cases that have done so. *See, e.g., Rice v. Office of Servicemembers' Grp. Life Ins.*, 260 F.3d 1240 (10th Cir. 2001). The Court finds these cases unpersuasive. At one point, the judiciary regularly implied (and often invented) causes of action. *See Alexander v. Sandoval*, 532 U.S. 275, 287 (2001) (discussing the "*ancien regime*" that "held sway" in the mid-twentieth century). But the Supreme Court has "abandoned" that judicially driven

"expansive rights-creating approach." *Medina v. Planned Parenthood S. Atl.*, 606 U.S. 357, 369 n.1 (2025) (citation omitted). "At bottom, creating a cause of action is a legislative endeavor." *Egbert v. Boule*, 596 U.S. 482, 491 (2022). And courts can infer a private cause of action only if "the law in question clearly and unambiguously uses rights-creating terms," "display[s] an unmistakable focus on individuals like the plaintiff," *Medina,* 606 U.S. at 368 (cleaned up), and "displays an intent to create not just a private right but also a private remedy," *Sandoval*, 532 U.S. at 286.

The parties identify nothing to satisfy this third requirement. Prudential stresses that the federal regulations here preempt state law, so these kinds of cases will often turn on interpretations of federal law. *See Prudential Ins. Co. of America v. King*, 453 F.2d 925, 931 (8th Cir. 1971); *see also Prudential Ins. Co. of America v. Athmer*, 178 F.3d 473, 475 (7th Cir. 1999) (arguing that it is "[b]etter that these policies should be governed by a uniform set of rules untethered to any particular jurisdiction"). No doubt that is true. But that argument simply assumes that if federal law governs an issue, there must necessarily be a federal cause of action. The Supreme Court has repeatedly rejected that argument. For example, the Supreme Court ruled that the Supremacy Clause provides no federal cause of action. *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015) (rejecting the argument that "our preemption jurisprudence . . . demonstrates that the Supremacy Clause creates a cause of action").

This Court will not lightly supply what Congress has omitted. "No statute pursues any single purpose at all costs," and Congress often "may not wish to pursue a provision's purpose to the extent of authorizing private suits." *Medina*, 606 U.S. at 368–69 (cleaned up). That is especially true when a statute commands many things. The statute here governs more than just payment. 38 U.S.C. § 1970. It also governs, among other things, notification

requirements. § 1967(f). Congress might rationally decide to enforce everything through private causes of action, nothing, or something in between. The Court cannot make those policy decisions. "[T]he decision whether to let private plaintiffs enforce a new statutory right poses delicate questions of public policy." *Medina*, 606 U.S. at 369 (cleaned up) ("New rights for some mean new duties for others. . . ."). As the Supreme Court recently held, "even a single sound reason to defer to Congress is enough to require a court to refrain from creating such a remedy." *Egbert*, 596 U.S. at 491 (cleaned up). Just so here.

True, the Tenth Circuit found an implied cause of action against an insurance company for beneficiaries of Servicemembers' Group Life Insurance policies. *See Rice*, 260 F.3d at 1246. But even that opinion concedes that the statute does not "refer[] explicitly to a federal forum" for claims by or against insurance companies, *id.* at 1247, so that court instead relied on federal regulations for its argument inferring a cause of action, *id.* at 1246–47 (citing 38 C.F.R. § 9.13). But regulations cannot create causes of action. *Sandoval*, 532 U.S. at 291 ("[I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress."). And the Tenth Circuit's argument is in tension with the Supreme Court's shift away from "the heady days in which [courts] assumed common-law powers to create causes of action." *Egbert*, 596 U.S. at 491 (citation omitted).

Likewise, *Rice*'s discussion about the statute's "structure" is not persuasive. *Rice*, 260 F.3d at 1246 (citing 38 U.S.C. § 1970(b)–(c)). In support of its argument finding an implied cause of action, *Rice* highlighted the reference in § 1970 to "claim[s]" made by beneficiaries of Servicemembers' Group Life Insurance policies. *Id.* But that section contemplates claims filed with an insurance company or with the Secretary of Veterans Affairs, not lawsuits filed in court. For example, § 1970(b) instructs insurance companies about the "order of

precedence" for paying contingent beneficiaries if the primary beneficiary "does not make claim therefor within one year after the death of the member or former member." *See also* § 1970(c) (explaining that if, within two years after the death of the insured, "neither the Secretary nor the administrative office established by the insurance company . . . has received any notice that any such claim will be made, payment may be made to a claimant as may in the judgment of the Secretary be equitably entitled thereto").

The Court also does not share *Rice*'s concern about Congress relying on state remedies to enforce a federal program. *Rice*, 260 F.3d at 1247 (saying that it would be "somewhat anomalous for Congress to rely completely on state causes of action when . . . federal law governs most aspects of the insurance policy and preempts inconsistent state law, and when the federal government has important interests at stake"). State courts are "competent to apply federal and state law." *McKesson v. Doe*, 592 U.S. 1, 5 (2020); *see also Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) ("[S]tate procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary."); *Robb v. Connolly*, 111 U.S. 624, 637 (1884) ("Upon the State courts . . . rests the obligation to guard, enforce, and protect every right granted or secured by the [C]onstitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them . . . .").

As Prudential suggested at oral argument, this case could be brought as a breach-of-contract or declaratory judgment action in state court. Missouri law also provides a mechanism to interplead potential insurance claimants. Mo. Rev. Stat. § 507.060. And the Federal Interpleader Act expressly provides jurisdiction where access to state court might be unavailable because potential claimants live in different States. 28 U.S.C. § 1335.

12

**B.**

The second way of invoking federal question jurisdiction also does not apply.  This case is not one of the "rare" circumstances where a claim based on state law "necessarily raises a substantial and actually disputed federal question."  *Royal Canin*, 604 U.S. at 26 (cleaned up).  That second category of federal question jurisdiction is exceedingly narrow, and any precedent supporting it "must be read with caution."  *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 808–09 (1986) ("[T]he vast majority of cases brought under the general federal-question jurisdiction of the federal courts are those in which federal law creates the cause of action.").  So narrow is this category that no federal question jurisdiction exists even when "a complaint alleg[es] a violation of a federal statute as an element of a state cause of action."  *Id.* at 817; *see also Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. Cal.*, 463 U.S. 1, 24–25 (1983) (denying federal question jurisdiction for an action by a state government, because the federal law applicable to the merits of the case did not create a right of action for state governments).  Parties cannot get into federal court merely by arguing that a federal regulation will apply to an eventual breach-of-contract claim under state law.

**Conclusion**

"[I]f a federal court hears a case between citizens of the same state presenting only questions arising out of state law, something has gone astray."  DeWilde, *supra*, at 470.  Just so here.  Because all the interested parties are Missouri citizens, the Court lacks diversity jurisdiction.  And the mere presence of a federal issue does not alone give the Court federal question jurisdiction.   Prudential can bring an interpleader action in state court.

**IT IS HEREBY ORDERED** that this case is **DISMISSED** for lack of subject-matter jurisdiction.

**IT IS FURTHER ORDERED** that Prudential's motion for default judgment, ECF 39, is **DENIED** as moot.


Dated this 31st day of March, 2026

_____

JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE

14